## M. M. PHILLIPS, *alias* DILL PHILLIPS, *v.* THE STATE.

1. FORGERY. — The third section of the act of 1876 "to provide for the detection and conviction of all forgers of land-titles" makes it an offence to take any step, or to do any act or thing in the commission of the offence, if any fraudulent intention may reasonably be inferred from such step, act, or thing.   A forged transfer of land, therefore, though a blank be left for the name of the transferee, is an instrument within the purview of the act.

2. CONSPIRACY — EVIDENCE. — Declarations of one conspirator in furtherance of the common design, made after its inception and before its completion, are evidence against his confederates, though made in their absence.

3. SAME. — The least degree of concert or collusion between the parties to an illegal transaction makes the act of one the act of all.   See the opinion for evidence held admissible under these rules.

4. PROOF OF HANDWRITING. — A signature offered as a standard of comparison cannot be proved to be an original and genuine signature merely by the opinion of a witness that it is so, such opinion being derived solely from the witness's general knowledge of the handwriting of the person whose signature it purports to be, but must be an admitted signature, or be established as genuine by undoubted evidence.   See the opinion *in extenso* on this subject.

5. DECLARATIONS of one of two or more persons who are shown to have been engaged in a common unlawful purpose are not admissible in evidence against the others, if made after the completion of the unlawful purpose.

APPEAL from the District Court of Travis.   Tried below before the Hon. E. B. TURNER.

The defendant, and also R. E. Hatch and William M. Gilleland, were charged by indictment with the forgery of the transfer of a certain bounty land-warrant, issued to George W. Jenkins, for two hundred and forty acres. The defendant, being alone upon his trial, was found guilty, and his punishment assessed at two years' confinement in the penitentiary.

The transfer was drawn up in usual form, except that it was made in blank. The name of defendant appeared to it as a witness. It is set out in full in the opinion.

James Neill testified, for the State, that he was a justice of the peace, and *ex officio* a notary public for Travis County, in June, 1877. First saw the transfer mentioned in the indictment, and which he identifies, on the last day of April or the first of May, 1877. On the morning or forenoon of one of those days, defendant came to witness's office, in the city of Austin, and presented the said paper to him for acknowledgment. Witness did not at the time know the defendant by name, though he had seen him on the streets of Austin. Witness told him that he could not authenticate the paper, because neither the party who signed the paper, nor the signature thereto, were known to him, and that he would have to bring some person known to witness, to identify him, before witness could take the acknowledgment. Defendant stated that he was not the man Jenkins, who signed the instrument, but that his name was Phillips; when witness told him that under those circumstances he could not take the acknowledgment until two witnesses had signed the paper, at the request of Jenkins, and one of them, known to witness, should come forward and swear that he signed the same at the request of Jenkins. Witness's best recollection is, that at that time no witnesses' names appeared to the paper, but only the name of George W. Jenkins. When defendant first came into witness's office he came alone, and said that he wanted the paper acknowledged; and witness thinks that it was in answer to

his question, if he was Jenkins, that he answered that he was not. Witness does not recollect having examined the paper close enough to see that it was a transfer in blank.

Witness next saw the paper on the second day of June 1877, following, when W. M. Gilleland, Mr. Hatch, and a stranger came into his office. Gilleland introduced the stranger as Jenkins, who had signed the paper. Gilleland said he wanted it sworn to, and witness asked the stranger if his name was Jenkins; to which he replied in the affirmative. Witness then directed him to hold up his right hand, and swore him to the contents of the paper, and attached his *jurat*. One of the parties said they wanted a notarial seal to it, and witness wrote " *Ex officio* Notary Public," put the impress of his seal on it, and, on the receipt of fifty cents, delivered the instrument; and the parties left. Witness thinks Hatch paid the fee. Had never seen Jenkins before or since, to his knowledge; but, two or three months afterwards, saw a man on the streets who very much resembled him, and whom he pointed out to Col. J. W. Robertson, and whose name, he has since learned, is Ezell.

Witness was looking out for Jenkins and Phillips, at the request of Rhoads Fisher. Saw Phillips frequently, but did not see Jenkins, unless the man Ezell was him.

Cross-examined, witness says that the defendant presented the paper for acknowledgment; and witness does not recollect ever having been introduced to him. Witness thinks he knows one Ed Dorst. Did not know defendant's business, but remembers having seen him with certain persons known as sporting men, in Travis County. Had seen defendant on the streets, but did not know him by name, and does not recollect whether he inquired his name, or whether defendant voluntarily gave it, when he came into the office the first time. Observed nothing particular or peculiar in his conduct when he presented the paper for acknowledgment.

H. L. Rankin testified that he lived at Hempstead, Texas, about the 9th of June, 1877. Saw the paper alleged to have been forged, in Austin. Witness wanted to purchase a fractional certificate, and among the persons to whom he applied for information as to where one could be bought was W. M. Gilleland, a clerk then in the general land office, and who was known well to witness, their wives being distantly related. Spoke to Gilleland in the land office. He told witness that he knew of one, owned by a man who would sell low, as he wanted money badly, and proposed to see him for witness after office hours, the parties agreeing to meet at a saloon on Congress Avenue. When witness met Gilleland that evening, he introduced witness to a Mr. Hatch, in front of the Palace Saloon, on Congress Avenue. Hatch took witness into the saloon, and inquired of a man in the saloon for the certificate, which was presently handed to him. The certificate and transfer were then attached, but the authentication by Fulmore, a notary public, had not yet been appended. The transfer was then in blank, and witness put the names of the grantees in it after he had bought it. Hatch asked witness $55 for it. Witness paid him $50, and took his receipt. Gilleland wrote the receipt, and Robert E. Hatch signed it.

Witness thinks that Gilleland got part of the money, and witness's impression was then that he got it in the nature of a loan, but knows nothing of the true inwardness of that transaction. Gilleland said that Phillips, the witness, was a young lawyer around Austin. Witness asked if there was any objection to his taking the papers around to C. R. Johns; and being answered in the negative, took the papers to Johns, and asked if his signature to the certificate, as comptroller, was genuine; to which Johns responded in the affirmative.

Witness did not buy from Jenkins, — traded only with Hatch; took no conveyance, — only the receipt, in order to

show what he had paid for it. He was buying certificates that would patent to assignees. Thought Gilleland's part in the transaction was an act of kindness, though one, of course, which would have looked strangely had it come from any one having no such relation with witness as Gilleland. The witness did not buy blindly, but inquired of Gilleland who Jenkins was; to which Gilleland replied that he knew him well; that he was an old coal-burner, who lived in the mountains and hauled coal to town to sell; that the thing was all right. And it was on the faith of this that the witness bought.

Gilleland said the certificate was good, but the parties had ignorantly had it sworn to and a *jurat* put to it, but that it could be remedied by having it duly authenticated by a notary public; and witness and Gilleland went to Mr. Fulmore. Witness wanted Gilleland to swear that he actually knew the party, but he only put it that he believed the party was Jenkins. After Fulmore's authentication, witness showed the certificate and papers to Rhoads Fisher, and for the first time observed that the name of Jenkins had been traced. Witness did not trace it. Witness had occupied various positions in which he found it necessary to examine papers, but does not profess to be a professional expert. Witness knows the signature to the receipt to be that of Hatch, because he saw him sign it; and the signature to the letter now shown witness he believes to be the same handwriting. Witness, being handed the transfer, says there is a striking resemblance in the word "June," as written in the letter signed by Hatch, and the transfer, — some peculiarity in the letter "e" in "June," — and thinks the same hand wrote both. The name "Jenkins" in the letter, and the name as evidently traced in the transfer, resemble somewhat. Witness discovered the tracing without the aid of a magnifying glass, though it is more apparent under such a glass. The words "2nd," in "2nd June," and "M. M. Phillips" appear written in colored ink. Gil-

leland's name is in different colored ink, and "G. W. Jenkins" a little darker; but witness thinks the ink is the same, but looks darker for being over pencil-marks.

Affidavits on motion for continuance and new trial, signed by Hatch (admitted), were offered in evidence, and witness says he believes the "letter" was written by the same hand.

Numerous witnesses were introduced as experts, who criticised and compared the various writings introduced, and all testified to the belief that all save the name of Gilleland, as a witness to the transfer, which was genuine, were written by the same hand. Mr. Fulmore testified that he attached the authentication to the transfer sworn to by Gilleland as the transfer of Jenkins. None of the witnesses had ever known a George W. Jenkins in Travis County.

For the defence, it was testified by a number of witnesses that the defendant was a quiet, sober, "nice" kind of a man, against whom none of the witnesses had heard ill report, and that he had been known as a sporting character and a bar-tender.

*Joe H. Stewart,* and *Carleton & Morris,* for the appellant. The indictment in this cause should have been quashed, because it shows on its face that the instrument alleged to have been forged by defendant was an instrument in blank, and, therefore, not a subject for forgery. Pasc. Dig., art. 2073; Laws 1876, pp. 59, 60; *Shanks* v. *The State,* 25 Texas (Supp.), 342; *Ham* v. *The State,* 4 Texas Ct. App. 677; *Henderson* v. *The State,* 14 Texas, 517.

The court erred in permitting H. L. Rankin, a witness for the State, to testify as to conversations that took place between himself and W. M. Gilleland, R. E. Hatch, and George W. Jenkins, or a party purporting to be Jenkins, the defendant not being present, and no evidence having been introduced to show any common purpose, or connection between defendant and any of the parties named, to

commit the offence charged against the defendant in this cause.

The testimony of this witness, Rankin, showed that he purchased a land-certificate from one R. E. Hatch, who had been introduced to him by one W. M. Gilleland; that Hatch had a transfer to the said certificate, purporting to be executed by George W. Jenkins, the original grantee of said certificate, which said transfer had the name of the grantee in blank; that he purchased said certificate from Hatch for $50, and received it, with the transfer in blank, purporting to be signed by Jenkins, from Hatch; that he afterwards learned such facts as satisfied him it was forged; that he had several conversations with Hatch and Gilleland about the trade, before he purchased the certificate; that he did not know the defendant Phillips, never saw him until this trial commenced, never knew of him in the trade with Hatch; that neither Gilleland nor Hatch ever told him, prior to his purchase, any thing about Phillips having any interest in the certificate. When this witness testified, there was no evidence before the jury showing any connection, conspiracy, or agreement between defendant, Hatch, and Gilleland, or either of them, to forge the instrument set out in the indictment. *Draper* v. *The State*, 22 Texas, 404; *Ake* v. *The State*, 30 Texas, 466; *Wright* v. *The State*, 43 Texas, 170; *Preston* v. *The State*, 4 Texas Ct. App. 186; 1 Greenl. on Ev., sect. 3; Stark. on Ev., sects. 401, 403; Ph. on Ev., sect. 414; *Garrard* v. *The State*, 50 Miss. 147; *Carskadon* v. *The State*, 7 W. Va. 1; *Binford* v. *Sumner*, 40 Pa. 9; *Jones* v. *Hurlburt*, 39 Barb. 403; *Burke* v. *Miller*, 7 Cush. 547; *The Commonwealth* v. *Crowninshield*, 10 Pick. 497.

The court erred in permitting Rhoads Fisher, a witness for the State, to examine the letter signed "Dill Phillips," and to make comparison of the handwriting in it with other papers, because a letter written by a person under arrest is as much of a declaration as a verbal statement made by

him, and cannot be used for any purpose in evidence against him; nor can it be used by a witness on the stand as a means by which to ascertain if other writings in evidence were written by the same hand.

In the trial of the cause, it was shown by the testimony of Dennis Corwin that he had received several letters purporting to be from defendant, through the mail; letter shown to him is one that came through the mail, date the 27th of July, 1878; and witness, after he got this letter, sent to Dallas and brought defendant here. The defendant was in jail at the time this letter purports to have been written. 1 Pasc. Dig., arts. 3126, 3127.

Again: it was not proper to allow the witness Rhoads Fisher to use the Dallas letter, signed "Dill Phillips," of the 27th of July, 1878, as a standard by which to compare other handwriting, until it had first been satisfactorily shown that said letter was actually written by Dill Phillips. The letter described was handed to Rhoads Fisher, a witness for the State, and he proceeded to point out the resemblances in the handwriting of this letter and in the handwriting of the name "M. M. Phillips," attached to the alleged forged transfer from George W. Jenkins, to a land-certificate; its resemblance to the name George W. Jenkins, appearing to the said transfer, and also its resemblance to the handwriting of other papers admitted to be defendant's. The only evidence tending to show that the Dallas letter, signed "Dill Phillips," was written by defendant, was that of Dennis Corwin, who testified: "Letter shown to me is one that came through the mail, date the 27th of July, 1878." *Eborn* v. *Zimpelman*, 47 Texas, 518; 1 Greenl. on Ev., sect. 581; *The Commonwealth* v. *Eastman*, 1 Cush. 217; *Moody* v. *Rowell*, 17 Pick. 315; *Richardson* v. *Newcomb*, 21 Pick. 315.

The court erred in permitting G. H. Crozier, a witness for the State, to testify as to conversations that took place between himself and one R. E. Hatch, the defendant not

being present, and no evidence having been introduced, at the time said Crozier testified, that any common purpose or connection of any kind existed between R. E. Hatch and defendant to commit the offence charged against the defendant in this cause.

This testimony showed that one R. E. Hatch, some time prior to the time when the instrument set out in the indictment was executed, came to the witness, defendant not being present, and asked him to write a transfer to a land-certificate. This witness states he did so, and that the instrument he wrote is the same one (except the signatures, which have been added since that time) as the instrument set out in this indictment, which instrument was handed to the witness for identification. The statements made by Hatch to witness, at the time witness wrote the paper, were admitted in evidence by the court, the defendant not being present. At the time witness testified, no evidence had been produced which tended to show, in any satisfactory manner, that defendant and Hatch were in any manner connected together, or had any common understanding or agreement to commit the offence charged against defendant in the indictment filed in this cause. *Draper* v. *The State*, 22 Texas, 404; *Ake* v. *The State*, 30 Texas, 466; *Wright* v. *The State*, 43 Texas, 170; *Preston* v. *The State*, 4 Texas Ct. App. 186; 1 Greenl. on Ev., sect. 3; Stark. on Ev., sects. 401, 403; Ph. on Ev., sect. 414; *Garrard* v. *The State*, 50 Miss. 147; *Carskadon* v. *The State*, 7 W. Va. 1; *Binford* v. *Sumner*, 40 Pa. 9; *Jones* v. *Hurlburt*, 39 Barb. 403; *Burke* v. *Miller*, 7 Cush. 547; *The Commonwealth* v. *Crowninshield*, 10 Pick. 497.

The testimony of the witness Crozier, giving the declarations of one R. E. Hatch, who was jointly indicted with defendant, after he (Hatch) was arrested, was not admissible in evidence, and should have been excluded by the court, when asked so to do by the defendant. The witness Crozier testified, over the objection of the defendant, that he

had a conversation with Hatch, after Hatch had been arrested; that witness asked Hatch what he was arrested for; he said, "For forgery." Witness asked Hatch if he had used the paper he (witness) had written for him; Hatch said he had not. Same authorities last cited.

The court erred in permitting the witness Dennis Corwin to testify about a conversation which took place between himself and defendant at Palestine, Texas, prior to the finding of the indictment in this cause, said conversation not being about the instrument or the matters and things set out in the indictment in this cause.

This witness testified that he had a conversation with defendant at Palestine. Witness told defendant he had an attachment for him as a witness, and defendant asked if it was in the Hatch case, and witness said yes. Witness spoke to defendant about Jenkins, and defendant said he had seen the man Gilleland said was Jenkins. Witness expressed doubt about Jenkins signing the document. The conversation was broken. Witness made allusion to the signature of Jenkins and defendant being the same in appearance, and defendant said either man might have written both, because the other could not write, or something to that effect; or he may have said, "I might have written them both." Witness does not recollect the words. Witness had reference to the paper set out in the indictment, but cannot say that defendant had it in his mind. Witness mentioned Hatch and Gilleland's names in the conversation, and defendant said he had told the boys they might get into trouble. 1 Greenl. on Ev., sects. 52, 53.

The court should not have permitted the witness Fisher to use the letter signed "Dill Phillips," dated Dallas, July 28, 1878, as a standard of comparison by which to compare the signatures of George W. Jenkins and M. M. Phillips to the instrument alleged to have been forged; and should not have permitted the witness to have stated to the jury the

similarities and resemblances existing between the said pen-
cil-letter, signed "Dill Phillips," and the signatures,
"George W. Jenkins" and "M. M. Phillips," to the alleged
forged papers, because the said letter signed "Dill
Phillips" had not been shown to have been written by
defendant. The only evidence introduced to show that
the said letter was written by defendant was the testimony
of Dennis Corwin, who stated: "I have received several
notes and letters from defendant through the mail, and
some handed to me in jail by him. The letter shown to me
is one that came through the mail, dated 27th July, 1878,
from Dallas; and I sent to Dallas and brought him here."

The witness Rhoads Fisher, while on the stand, was
handed the said letter, dated July 27, 1878, to make com-
parison with other papers, among which was the paper
alleged to be forged; and after he had compared them
together, he proceeded to state the resemblance between
the letter and the signature, "M. M. Phillips," to the
alleged forged paper; and stated, among other things, that
the capital "Ms" in the letter and the capital "Ms" in the
signature "M. M. Phillips," to the alleged forged transfer,
are the same style of "Ms," with slight variations. The
court refused to allow the said Dallas letter to go to the jury
in evidence. *Eborn* v. *Zimpelman*, 47 Texas, 518; 1
Greenl. on Ev. sects. 579–581; *The Commonwealth* v. *East-
man*, 1 Cush. 217; *Moody* v. *Rowell*, 17 Pick. 490; *Rich-
ardson* v. *Newcomb*, 21 Pick. 315.

The court erred in refusing to exclude from the jury all
the testimony of the witnesses Rhoads Fisher and Joseph
Spence as to their opinion as to who wrote the pencilled
letter signed "Dill Phillips," dated July 27, 1878, and all
their testimony given to the jury based on their comparison
of the handwriting of said letter with other writings, par-
ticularly the signatures to the alleged forged transfer, the
court having ruled that the said letter could not be read in
evidence to the jury, it not having been shown to have been

written by the defendant.    The witnesses Rhoads Fisher and Joseph Spence were permitted, while on the stand, to examine the Dallas letter, and to compare it with the signatures to the alleged forged transfer, and to state to the jury the points of similarity between the handwriting of the said letter and that of the signatures to the alleged forged transfer, as well as to that of other papers.    After this testimony had been admitted, the State offered the Dallas pencil-letter in evidence, and it was excluded by the court, on the ground that it had not been shown to have been written by the defendant.    See authorities last cited.

The court erred in permitting the State to read in evidence to the jury a certain paper purporting to be a transfer from George W. Jenkins to August and Conrad Bering for a land-certificate, and purporting to be witnessed by M. M. Phillips and W. M. Gilleland, as shown in defendant's bill of exceptions.    The court should have excluded the said paper in evidence, because it is not the paper set out in the indictment filed in this cause, but varies materially therefrom.    The defendant was charged, jointly with two others, with having forged a transfer to a land-certificate by signing the name of George W. Jenkins thereto, and the indictment sets out the instrument *in hæc verba*, showing the name of the grantee therein to be blank.    The instrument offered in evidence was to August and Conrad Bering, and thus varied materially from the paper set out in the indictment.    *Dawson* v. *The State*, 33 Texas, 506 ; *Collier* v. *The State*, 4 Texas Ct. App. 12 ; *Perry* v. *The State*, 4 Texas Ct. App. 566 ; *McKee* v. *The State*, 4 Texas Ct. App. 625 ; 1 Greenl. on Ev., sect. 65 ; *United States* v. *Hall*, 4 Cranch C. Ct. 229.

The court should not have permitted the transfer signed "George W. Jenkins," made to August and Conrad Bering, and being for a land-certificate, to be read in evidence to the jury, as the evidence disclosed the fact that the names of August and Conrad Bering had been inserted in the said transfer by H. L. Rankin, without any authority from

defendant, R. E. Hatch, or W. M. Gilleland, after it had passed into the possession of Rankin ; and, being an instrument in blank, it could not be the subject of forgery, and was no evidence of the commission of said offence.   Pasc. Dig., art. 2093 ; Laws Texas 1876, pp. 59, 60 ; *Henderson* v. *The State*, 14 Texas, 517 ; *Shanks* v. *The State*, 25 Texas (Supp.), 342 ; *Ham* v. *The State*, 4 Texas Ct. App. 677.

To charge the jury as to the law relating to the forgery of any other character of instrument except that set out in the indictment was calculated to confuse the minds of the jury, by presenting to them issues not properly before them, and was therefore erroneous.   *Austin* v. *Talk*, 20 Texas, 167 ; *Dodd* v. *Arnold*, 28 Texas, 97 ; *O'Mealey* v. *The State*, 1 Texas Ct. App. 180 ; *Kouns* v. *The State*, 3 Texas Ct. App. 13.

The signing the name of another to a blank instrument is not forgery, unless the blanks are afterwards filled by the party signing ; and the court erred in refusing the first charge asked by the defendant, which was, in substance, that if the jury found that the alleged forged transfer was made in blank originally, and was not filled up afterwards with a criminal intent, they should find for the defendant.   Pasc. Dig., art. 2093 ; Laws Texas 1876, pp. 59, 60 ; *Henderson* v. *The State*, 14 Texas, 517 ; *Shanks* v. *The State*, 25 Texas (Supp.), 342 ; *Ham* v. *The State*, 4 Texas Ct. App. 645.

The court erred in refusing the third charge asked, which was, in substance, that if the defendant did at one time form a design, with others, to commit the offence set out in the indictment, but afterwards abandoned such purpose before he took any one step to its accomplishment, and took no further steps in the matter, even if his co-conspirators did continue to pursue the common design, the defendant could not be responsible for the acts of others after he had abandoned the common purpose.

The court erred in refusing the fourth charge asked by defendant, which was, in substance, that when a party is on trial on a charge of felony, if the jury, from the evidence, can reasonably account for the conduct of the defendant on any other hypothesis than his guilt, they should acquit. 1 Pasc. Dig., art. 3105.

*Thomas Ball*, Assistant Attorney-General, for the State.

ECTOR, P. J.   The appellant, R. E. Hatch, and William M. Gilleland were jointly indicted, on the twenty-first day of May, 1878.   The indictment contains two counts, — one charging the defendants with the forgery of the transfer of a certain bounty land-certificate of the State of Texas, issued to George W. Jenkins, for two hundred and forty acres of land in the State of Texas, purporting to be a transfer and conveyance in blank of the land aforesaid from the said George W. Jenkins; and the other, with uttering said false and forged transfer, knowing it to be a forgery.   On the fifth day of December, 1878, the appellant was put upon his trial on the first count in the indictment.   Appellant pleaded not guilty.   The jury returned a verdict of guilty, and assessed his punishment at two years' confinement in the penitentiary.

The alleged forged instrument in writing is set out in the indictment, and is as follows, to-wit: —

" The State of Texas, ⎱
    County of Travis.    ⎰

    " Know all men by these presents, that I, George W. Jenkins, formerly of Galveston County, of the State of Texas, for a valuable consideration, hereby bargain, and sell, and convey my bounty-warrant, No. 66, for two hundred and forty acres of land, issued 10th October, 1859, by Clement R. Johns, comptroller, and all lands acquired by virtue of the same, unto ————.   I hereby bind myself, my heirs, and administrators, to warrant and defend the

same against all persons whomsoever. Witness my hand and seal, this, the 2d day of June, 1877.

"GEORGE W. JENKINS.

"M. M. PHILLIPS.

"WM. M. GILLELAND."

The defendant filed a motion to quash the indictment, which was overruled.

. It appears from the face of the indictment that it was presented in a court having jurisdiction of the offence. The indictment commences as follows: "In the name and by the authority of the State of Texas, the grand jurors of Travis County, in said State, at the April term, A. D. 1878, of the District Court of said county, upon their oaths, in said court present," etc. The law in force when the indictment was found, in prescribing the terms of the District Court of Travis County, fixed the first term of each year as beginning " on the fifteenth Monday after the first Monday in January and July, and may continue the session until the business is disposed of." The record also shows that the fact of the presentment of the indictment in open court by the grand jury was entered upon the minutes of said court by the clerk, noting briefly the style of the action and the offence charged.

The second objection raised to the indictment is, that it shows on its face that the instrument alleged to have been forged by defendant was an instrument in blank, and therefore not a subject for forgery. In support of this position, counsel for the accused have cited us to the case of *Shanks* v. *The State*, 25 Texas (Supp.), 342, in which it was held by the Supreme Court that there was no sufficient evidence that such an assignment of the warrant was made by the appellant as would in any way affect the property in the warrant, and that the assignment in blank was inoperative. The indictment in the case at bar was drawn under an act passed by the Fifteenth Legislature of this State, entitled " An act to provide for the detection and conviction of

all forgers of land-titles," approved July 28, 1876. Gen.
Laws, 59, 60. Upon an indictment under the first and sec-
ond sections of this statute, to warrant a conviction it is
expressly declared in the third section that it shall only be
necessary to prove that the person charged took any one
step, or did any act or thing in the commission of the
offence, if from such step, act, or thing any fraudulent
intention may be reasonably inferred.

Appellant's third assignment of error is, " that the court
erred in permitting H. L. Rankin, a witness, to testify as to
conversations between himself and W. M. Gilleland, R. E.
Hatch, and George W. Jenkins, or a party purporting to be
Jenkins, the defendant not being present, and no evidence
having been introduced to show any common purpose or
connection between defendant and any of the parties named,
to commit the offence charged in this cause." A careful
examination of the statement of facts does not disclose that
Rankin testified that Jenkins was present at the time he
purchased the land-certificate, or that Rankin testified as to
any conversation between him and Jenkins. Rankin states
that he bought the warrant of Hatch ; that he then inquired
of Gilleland who Jenkins was, and Gilleland said he was an
old coal-burner living in the mountains ; that he knew him
very well, and that he hauled coal to town to sell.

The name of the grantee of the transfer was not in the
transfer at the time Rankin made the trade with Hatch. It
was at that time a transfer in blank. Rankin testifies that
he put the names of the grantees in the transfer after he
bought it.

Dill Phillips, the appellant, was the first person seen in
possession of the transfer in blank, with the name of George
W. Jenkins signed to it, and without any witnesses. Appel-
lant presented it for acknowledgment to James Neill, a justice
of the peace of Travis County, and *ex officio* notary public,
for acknowledgment. This officer told appellant that he
could not acknowledge the paper because the name of the

party, nor the party who signed the paper, were known by him, and that he would have to bring some person he (Neill) knew, to identify him as the person who signed the instrument. Appellant said he was not the ·man Jenkins, the signer, but that his name was Phillips; and he went away, taking the instrument with him.

The fact that appellant was first seen in possession of said transfer, which he presented to Neill, and the testimony of the State's witness Corwin in regard to the conversation had with appellant at Palestine, before he was indicted, cause us to believe that the third assignment of error was not well taken.

Mr. Wharton says: "When a conspiracy is shown to exist, which is usually inductively from circumstances, then the declarations of one conspirator in furtherance of the common design, as long as the conspiracy continues, are admissible against his associates, though made in the absence of the latter. The least degree of concert or collusion between the parties to an illegal transaction makes the act of one the act of all." 2 Whart. on Ev., sec. 1205; *Hannon* v. *The State*, 5 Texas Ct. App. 549.

It is insisted that the court erred in permitting Rhoads Fisher and Joseph Spence, witnesses for the State, as experts, to examine a letter in pencil, signed "Dill Phillips," dated at Dallas, July 27, 1878, for the purpose of comparing the handwriting of said letter with the admitted handwriting of appellant to an application for a continuance and for attachments, and with the signature "M. M. Phillips" attached to the instrument alleged to be forged, as shown by defendant's bills of exception Nos. 7 and 8. Appellant objected to this evidence when offered, because it had not been shown that said Dallas letter was in the handwriting of appellant, except by the statements of the witnesses Corwin and Sublett; which objections were overruled, and the paper was permitted to be handed to said witnesses Fisher and Spence, as they were each separately on the stand, and

they proceeded, in answer, to state (as appears from the statement of facts) that, in their opinion, the "Dallas letter" and the signature to the affidavit for continuance and for attachment, and the signature "M. M. Phillips," as a witness to the alleged forged transfer, were all written by the same person.

After the witnesses Fisher and Spence had testified before the jury as above stated, the appellant then raised the point that a standard of handwriting had not been established, to permit the use of what was known as the "Dallas letter;" and the court, upon such suggestion, excluded the said letter from further use as a standard for comparison. Appellant then, immediately upon such ruling, asked the court to exclude and withdraw the testimony of said Fisher and Spence, as their opinions asked with reference to who wrote the same, and which had gone to the jury up to the time of said ruling; which the court refused to do, and the appellant excepted, and took a bill of exceptions.

All the proof made by Dennis Corwin, a witness for the State, as disclosed by the record, in regard to the "Dallas letter," is as follows: "Letter shown to me is one that came through the mail, date 27th July, 1878, — the Dallas letter; and I sent to Dallas and brought him (Phillips) here." This witness also testified that he was the sheriff of Travis County. No mention is made in Sublett's testimony in regard to the Dallas letter.

We must conclude that neither Corwin nor Sublett established, by clear and undisputed proof, that said letter was written by appellant; for the reason that, when the point was made that a standard of handwriting had not been established to permit its use, the court, upon such suggestion, excluded it from further use as a standard of comparison. After signing the bill of exceptions taken by appellant to the rulings of the court in refusing to withdraw from before the jury the testimony of Fisher and Spence in regard to the "Dallas letter," the court adds the following

note as a reason for his ruling: "I hold that, if parties sit by and let evidence be introduced without objection, speculating upon its character, and if not favorable, ask the court to exclude it, and if favorable, claim its benefits, they are not entitled to exclude such evidence after admitted." Appellant availed himself of every opportunity, on the trial, to prevent the experts from testifying in regard to this letter.

To obtain a conviction in this case, it was necessary for the State to prove that the signature "M. M. Phillips," annexed as a witness to the instrument alleged to be a forgery, was written by the appellant; and the counsel for the prosecution was allowed to use the "Dallas letter" as a test document, with others, for the purpose of comparison, to establish said fact necessary to be proved. It is competent to give evidence of handwriting, by comparison made by experts or by the jury. Pasc. Dig., art. 3131. But the handwriting used as a standard must be either an admitted signature, or be established by clear and undoubted proof.

The Supreme Court of Massachusetts, in the case of The Commonwealth v. Eastman, 1 Cush. 217, say that "copies of letters in the letter-book of the defendants were not admissible as competent standards of comparison by which to prove the genuineness of signatures to papers produced on the part of the prosecution. Impressions of writings produced by means of a press, or duplicate copies made by a machine, are not admissible for this purpose. Nothing but original signatures can be used as standards of comparison by which to prove other signatures to be genuine. Nor can a paper, proposed to be used as a standard, be proved to be an original and a genuine signature merely by the opinion of a witness that it is so, such opinion being derived solely from his general knowledge of the handwriting of the person whose signature it purported to be. The evidence resulting from a comparison of a disputed signature with other proved signatures is not regarded as evi-

dence of the most satisfactory character,.and by some most respectable judicial tribunals is entirely rejected in this Commonwealth. It is competent evidence, but the handwriting used as a standard must first be established by clear and undoubted proof, — that is, either by direct evidence of the signature, or by some equivalent evidence." See also the cases of *Moody* v. *Rowell*, 17 Pick. 490 ; *Richardson* v. *Newcomb*, 21 Pick. 315.

Our Supreme Court, in *Eborn* v. *Zimpelman*, 47 Texas, 503, hold that " a signature offered for the purpose of comparison cannot be proved to be an original and genuine signature merely ·by the opinion of the witness that it is so, such opinion being derived solely from the witness's general knowledge of the handwriting of the person whose signature it purports to be ; " citing approvingly the case of *The Commonwealth* v. *Eastman*, 1 Cush. 217.

No doubt, inconsistent authorities may be found in England and our sister States, but it is not worth our while to discuss them ; for, as we have a rule of our own in this State, it is best that we should adhere to it. We believe that when the court excluded the Dallas letter as a standard of comparison, it should also have withdrawn from the jury the testimony of said Fisher and said Spence in regard to it, on the motion made by appellant for this purpose.

We also believe that the court committed an error in permitting the State's witness G. H. Crozier to testify, over objections of appellant, as to a conversation he had with R. E. Hatch, after his arrest (appellant not being present), in reference to the transfer set out in the indictment. The rule is, that the declarations of one of two or more persons who are shown to have engaged in a common unlawful purpose are not admissible in evidence against the others, if made after the completion of the unlawful purpose. When the common enterprise is at an end, whether by accomplishment or abandonment, no one of the conspirators is per-

mitted, by any subsequent act or declaration of his own, to affect the others.

We deem it unnecessary to discuss the other errors assigned, as they may not arise on another trial.

The judgment of the District Court is reversed, and the cause remanded.

*Reversed and remanded.*